IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 13-cv-02428-RBJ

LINDA MARIE BROWN,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

    Defendant.

---

## ORDER

---

This case is before the Court on plaintiff Linda Marie Brown's Application for an Award of Attorney's Fees Under the Equal Access to Justice Act, 28 U.S.C. § 2412 [ECF No. 19].  For the following reasons, the motion is granted.

### FACTS

Ms. Brown applied for social security disability benefits on December 21, 2010, claiming an inability to work since her alleged onset date of December 21, 2010 due to brain and nerve damage, fatigue, and blurry vision in her left eye.  Her application for benefits was initially denied on March 2, 2011.  Ms. Brown requested a hearing before an Administrative Law Judge ("ALJ").  After holding a hearing on June 11, 2012, the ALJ issued an unfavorable decision denying Ms. Brown social security benefits.  The Appeals Council denied her request for review on July 29, 2013, and Ms. Brown filed a timely appeal to this Court on September 6, 2013.

Ms. Brown raised four issues on appeal: (1) the ALJ should have found that she was disabled because she met the criteria of Listing 12.02; (2) the ALJ failed to base his mental RFC

assessment on substantial evidence in the record; (3) the ALJ failed to base his credibility assessment on substantial evidence in the record; and (4) the Commissioner erroneously failed to include new evidence reviewed by the Appeals Council when submitting the administrative record to this Court. In an Order issued May 20, 2014, this Court reversed the ALJ's decision and remanded the case for further proceedings. [ECF No. 17]. Specifically, this Court held that there was substantial evidence in the record supporting the ALJ's determination that Ms. Brown did not meet the criteria of Listing 12.02 and that the Appeals Council did not err in failing to include new evidence in the record, but that the ALJ failed to properly take into account the treatment records and opinions of Ms. Brown's treating physician, Dr. Healey, in determining Mr. Brown's RFC.[1] The Court noted that the ALJ failed to discuss one significant opinion of Dr. Healey from October 2010, and that the ALJ's analysis of the January 2011 and April 2012 treatment records proved deficient. As such, the Court held that the case be remanded for further findings on Dr. Healey's treatment records and opinions, specifically adding that "[t]hese treatment records should be analyzed under the two-step inquiry" from *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011), and that "any opinions given on the ultimate issue of disability must be carefully considered" pursuant to Social Security Ruling ("SSR") 96-5p, 1996 WL 374183, at *2 (July 2, 1996). [ECF No. 17 at 22–26].

## ANALYSIS

### A. Award of Fees Under the EAJA.

The Equal Access to Justice Act ("EAJA") provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in

---

[1] The Court declined to make a finding as to whether the ALJ based his credibility assessment on substantial evidence in the record, instead holding that "since this case is being remanded for other reasons, the Court requests that the ALJ consider the[] letters" submitted by Ms. Brown's family, coworkers, and employer in assessing her credibility. [ECF No. 17 at 31].

any civil action . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).  Thus, to prevail under the EAJA, a party must show (1) that it was

the prevailing party; (2) the position of the United States was not substantially justified; and (3)

there are no special circumstances that make an award unjust.

In a social security case, a plaintiff is the prevailing party when the district court remands

to the Commissioner of Social Security under the fourth sentence of 42 U.S.C. § 405(g).[2]

*Hackett v. Barnhart*, 475 F.3d 1166, 1168 (10th Cir. 2007).  In an order dated May 20, 2014 this

Court reversed the decision of the Commissioner to deny Ms. Brown benefits and remanded to

the ALJ for additional review.  [ECF No. 17].  Thus, Ms. Brown was the prevailing party.  The

government has stipulated that there are no special circumstances that make an award unjust.

*See* [ECF No. 19 at 4].  Therefore, this analysis focuses on the second prong: whether the

government's position was substantially justified.

When contesting an EAJA fee application, the burden is on the government to show that

its position was substantially justified.  *Hackett*, 475 F.3d at 1170.  In litigation following an

administrative proceeding, the government's position is both the position it took in the

underlying administrative proceeding and in subsequent litigation defending that position.  *Id.* at

1174.  EAJA "fees generally should be awarded where the government's underlying action was

unreasonable even if the government advanced a reasonable litigation position."  *Id.* (quoting

*United States v. Marolf*, 277 F.3d 1156, 1159 (9th Cir. 2002).  In this circuit, substantially

justified means that the government's position had a reasonable basis in both law and fact.

*Veltman v. Astrue*, 261 F. App'x 83, 85 (10th Cir. 2008).  The government's position is not

---

[2] The fourth sentence of 42 U.S.C. § 405(g) provides: "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

substantially justified if its position is considered unreasonable "as a whole." *Hackett*, 475 F.3d at 1175.

In the process of analyzing a social security disability application, the ALJ is responsible for evaluating the medical opinions on record.  In doing so, "the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser*, 638 F.3d at 1330.  At step one the ALJ must determine whether a treating physician's medical opinion is conclusive and should thus be given controlling weight.  *See id.*  If it is not given controlling weight, the opinion is still entitled to deference and must be weighed using the factors in 20 C.F.R. §§ 404.1527 and 416.927.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)).  Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301 (citing *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)).  Though an ALJ need not discuss every factor, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), the ALJ "must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons . . . for the weight assigned," *Krauser*, 638 F.3d at 1330.  Moreover, the ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.  *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004).

The Commissioner argues that her position was substantially justified because, based on her analysis of the Court's Order, "the case ultimately turned on whether the ALJ reasonably

discounted Dr. Healey's opinion that Plaintiff would miss four or more days of work per month."
[ECF No. 20 at 3]. As a basis for this conclusion, the Commissioner reasoned that because the
Court did not find reversible error in regards to Dr. Berkowitz's "similar opinion," the only
relevant issue was the difference between the two doctor's opinions: the absenteeism issue. The
Court disagrees. With regard to the opinion of Dr. Berkowitz, the State agency psychological
consultant, the Court found that the claimant put forth two unavailing arguments in an attempt to
find error with the ALJ's reliance on the opinion. First, Ms. Brown unpersuasively argued that
the ALJ was effectively precluded from taking into account Dr. Berkowitz's opinion simply
because he did not have Dr. Healey's treatment records at the time he made his assessment.
[ECF No. 17 at 26–27]. The plaintiff's second contention, that Dr. Berkowitz's opinion was not
properly incorporated into the RFC, proved equally unavailing. *Id.* at 27–28. The Court never
reviewed Dr. Berkowitz's opinion for any type of substantive error.

Furthermore, the failure of the ALJ to take into account Dr. Healey's opinion on
absenteeism was not insignificant and was not substantially justified. As the Court pointed out,
the ALJ had found that this restriction was "not consistent with the claimant's past work history
or the record as a whole." *See* [ECF No. 17 at 25]. The Court disagreed, discussing how the
record was clear that Ms. Brown had been forced to cut back her hours twice after her car
accident, concluding that "[i]f anything, the record and her work history suggest that Ms. Brown
would have to take off one to two days per week, or four to eight days per month." *Id.*

The Commissioner next states that "the Court recognized that it was possible that
Plaintiff could work five days per week at an unskilled job, as compared to her ability to work
full-time in the semi-skilled job of CNA." [ECF No. 20 at 4]. The Court actually stated, "While
it is possible she could work five days per week at an unskilled job, as compared to her inability

to do so at a semi-skilled job, it is not clear from the record that this would be the case." [ECF No. 17 at 25]. The Court did add a footnote indicating that an individual need not work full time to meet the substantial gainful activity threshold, as the Commissioner points out. However the Court also noted that the ALJ never made a finding as to how many days Ms. Brown would need to work to meet that threshold, which is based purely on income. *See* [ECF No. 17 at 25 n.6]. Overall, the Court held that "the weight afforded to [the absenteeism] portion of Dr. Healey's opinion is not supported by substantial evidence in the record." *Id.* at 25. The Commissioner has not met its burden in showing that this error was substantially justified.

The Court also found other problems with the ALJ's treatment of Dr. Healey's opinions, specifically the findings that the ALJ failed to consider a substantial opinion of Dr. Healey from October 2010 and failed properly to analyze another significant opinion of Dr. Healey from January 2011. [ECF No. 17 at 23–24]. Furthermore, in its Order the Court noted that on appeal, the government argued that these opinions constituted opinions on the ultimate legal issue of disability, a determination reserved to the Commissioner. [ECF No. 17 at 25]. However, the SSRs are quite clear that a medical source opinion on any issue must be given careful consideration, "including opinions about issues that are reserved to the Commissioner." SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996).[3] While the government's statement is true in and of itself, the way in which it was presented in the Response brief suggested that the ALJ was correct in disregarding these opinions altogether. *See* [ECF No. 14 at 17]. As such, the Court does not find that the litigation position was substantially justified.

---

[3] Social Security Rulings "are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1). The rulings represent "precedent final opinions and orders and statements of policy and interpretations that [the Commissioner has] adopted." *Id.* They are to be relied upon as precedents in adjudicating cases. *See* Social Security Rulings: Preface, *available at* http://ssa.gov/OP_Home/rulings/rulings-pref.html.

Overall, the Court finds that the government's position was not substantially justified within the meaning of the EAJA.  The Court found significant problems with the analysis of three of Dr. Healey's treatment records and opinions, particularly the ones most helpful to Ms. Brown's application.  The ALJ did not have a reasonable basis in law or fact for giving little, if any, weight to these opinions, and the Commissioner did not have a reasonable basis in law for suggesting that the opinions were undeserving of careful consideration insofar as they concerned opinions about issues reserved to the Commissioner.

## B. Request of Fees.

Plaintiff requests an award of $4,025.38 in attorney's fees accrued through the litigation of the instant motion,[4] constituting 21.6 hours of attorney time at a rate of $186.36 per hour. [ECF No. 19-2].  The Commissioner does not dispute the amount requested.  [*See* ECF No. 20].

To determine a reasonable fee request, a court must begin by calculating the "lodestar amount."  *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).  The lodestar amount is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The Court finds that the hours claimed for attorney work are reasonable.  In addition, the Court notes that Ms. Atkinson undertook a substantial risk of loss in connection with the case, devoted considerable time and effort in presenting Ms. Brown's position, and obtained a favorable result for her.

In light of the hours worked and the fact that the Commissioner does not dispute the amount of fees requested, the Court finds that an attorney's fee of $4,025.38 ($186.36 per hour multiplied by 21.6 hours) is reasonable.

---

[4] Ms. Atkinson requested that she be allowed to supplement the amount of the fee requested should it be necessary to prepare and file a Reply brief.  [ECF No. 19 at ¶ 7].  However, Ms. Atkinson did not indicate how many hours were spent reading and replying to the government's Response brief in her Reply.  *See generally* [ECF No. 21].  As such, the Court is limited to awarding the amount of fees requested in the opening brief.

C. __Assignment of Award__.

The plaintiff further asks this Court to assign the award of fees directly to Ms. Atkinson pursuant to the Assignment of EAJA Fee submitted by the plaintiff [ECF No. 19-1], subject to any offset by the Treasury Department to satisfy any debts the plaintiff may personally owe to the government.  The defendant opposes assignment of the award, contending that EAJA awards belong to the plaintiff and are subject to offset under the Treasury Offset Program (31 U.S.C. § 3716(c)(3)(B)) pursuant to *Astrue v. Ratliff*, 560 U.S. 586 (2010).  So far, nothing the government has asserted conflicts with Ms. Brown's position.  Of course the fees belong to the plaintiff—that is why she must assign them over to Ms. Atkinson.  Furthermore, the motion acknowledges the requirement under *Ratliff* that the award be offset by any applicable debt owed to the government.  *See* [ECF No. 19 at 6].

Next, the government contends that if the Court orders an award under the EAJA, the Commissioner has the right to (1) determine that the plaintiff properly assigned her right to EAJA fees to her attorney; (2) determine that the plaintiff does not owe a debt subject to offset under the Treasury Offset Program; and (3) agree to waive the requirements of the Anti-Assignment Act.  [ECF No. 20 at 5].  According to the Commissioner, only at such time will the EAJA fees be made payable to Ms. Atkinson.  The Court disagrees.  In fact, the Court recently addressed these positions in another case, *Boykins v. Colvin*, No. 12-CV-000960-RBJ, 2014 WL 3585304, at *4–5 (D. Colo. July 21, 2014).

First, it is the proper role of the Court to determine the validity of an assignment.  *See Rodgers v. Astrue*, 747 F. Supp. 2d 1125, 1128 (E.D. Ark. 2010).  In *Rodgers*, Magistrate Judge J. Thomas Ray discussed in detail the problems that could ensue should this evaluation be left to the Commissioner.  First, the attorney "may be placed in administrative limbo for an unknown

but potentially lengthy period of time." *Id.* at 1129.  Second, it would be inappropriate to allow

the Commissioner, who has an inherent interest in the outcome of the issue, to render this

decision.  *Id.*  Third, even if the Commissioner assigned the task to a neutral ALJ, an outcome

against assignment would likely be appealed, thereby returning the question to the original

federal court.  *Id.*  "In other words, the claimant's attorney would be required to embark on an

administrative journey, which might take many months to complete, only to end up once again

before this Court, requesting it to reverse the Commissioner's final decision on attorney's fees."

*Id.*  Judge Ray adds that because it is unquestionably within the jurisdiction of the federal court

(and not the Commissioner) to decide whether to grant an award under the EAJA, whether the

requested amount of fees and expenses is reasonable, and who is entitled to receive those fees

and expenses, the "corollary issues of whether a prevailing claimant has lawfully assigned those

fees and expenses to his or her attorney and whether the claimant owes the government a debt

that should be offset against those fees and expenses are inextricably related to the other issues

which *the Court* must decide in resolving every Application for Attorney's Fees under the

EAJA."  *Id.* (emphasis in original).  The Court is persuaded by Judge Ray's thorough reasoning.

The Court has evaluated the assignment [ECF No. 19-1 at ¶ 3] and finds no defect on its face.

Next, the government contends that it should be the one to determine whether the

Plaintiff owes a debt subject to offset under the Treasury Offset Program.  For the same reasons

as stated above, the Court finds that it is in the best position to determine whether the plaintiff

owes an outstanding debt to the government.  Just as the plaintiff must include documentation in

support of the reasonable attorney's fees being requested, so too must the government put forth

evidence in support of any claim that it is owed a debt by the litigant.  A claim for a debt owed

should be included in the government's response to the initial EAJA request as a requested set off against the fees owed.

Finally, the government argues that it must agree to waive the requirements of the Anti-Assignment Act. While it is true that it is in the sole discretion of the government whether to accept an assignment it is first for the Court to decide whether an assignment is voidable under the provisions of the Anti-Assignment Act. The Anti-Assignment Act states, in pertinent part: "An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued." 31 U.S.C. § 3727(b). However, a litigant can in fact preemptively assign the right to her award to her attorney. *Murkeldove v. Astrue*, 635 F.3d 784, 794 (5th Cir. 2011) ("[T]he [Anti-Assignment] Act serves as a defense that the Government can raise against a claim and not . . . an *ex ante* bar to forming a contingency-fee agreement."); *cf. Delmarva Power & Light Co. v. United States*, 542 F.3d 889, 893 (Fed. Cir. 2008) (holding that the government can waive the Anti-Assignment Act's prohibition of the assignment of claims). However, the government may also request that the assignment be voided pursuant to the Act. Thus, when an assignment has been executed "[l]itigants may retain fee awards *only if* the assignment provision becomes void, usually because the government requests that the court void the provision under the AAA." *Turner v. Comm'r of Soc. Sec.*, 680 F.3d 721, 725 (6th Cir. 2012) (emphasis added). Notably, the government has not requested that the Court void the assignment under the AAA or put forth any argument as to why it should be voided.

## CONCLUSION

In this case, the government did not object to the reasonableness of the attorney's fees presented to this Court. It also made no claim that any debt was owed to the United States by

Ms. Brown nor did it request that the Court void the assignment under the Anti-Assignment Act. The Court found that the plaintiff was entitled to the attorney's fee award under the EAJA, that the amount requested was reasonable, and that the assignment was valid.  As such, the Court directs that the approved fee of $4,025.38 shall be made payable to Ann J. Atkinson and be sent directly to her law office as indicated in the plaintiff's motion.  [ECF No. 19 at 6].

## ORDER

For the foregoing reasons, Plaintiff's Application for an Award of Attorney's Fees Under the Equal Access to Justice Act, 28 U.S.C. § 2412 [ECF No. 19] is GRANTED.  Ms. Brown is awarded $4,025.38, which shall be made payable to her attorney, Ann J. Atkinson, and delivered to Ms. Atkinson's law offices.

DATED this 27th day of August, 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge